# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROWN & BROWN, INC., <br> BROWN & BROWN OF <br> PENNSYLVANIA, INC. and GRINSPEC, <br> INC. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br> <br> <br> <br> CIVIL ACTION <br> <br> <br> <br> <br> NO. 10-3898 |
| Plaintiffs, | | |
| v. | | |
| ROBERT COLA, RYAN TOLA, and <br> DOYLE ALLIANCE GROUP, | | |
| Defendants. | | |

## MEMORANDUM

BUCKWALTER, S.J.                                                              December 22, 2010

Currently pending before the Court are Plaintiffs' Motion to Dismiss the Counterclaims of Defendants Ryan Tola and Robert Cola pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

This Court previously summarized the detailed facts underlying this litigation in an October 4, 2010 Memorandum and Order. See Brown & Brown, Inc. v. Co., __ F. Supp. 2d __, 2010 WL 3928589 (E.D. Pa. Oct. 4, 2010). In lieu of repeating that synopsis here, the Court simply incorporates it by reference and reviews only the facts pertinent to the Counterclaims at issue.

### A. Facts Relevant to Defendant Tola's Counterclaim

According to Defendant Ryan Tola's Counterclaim, Tola accepted employment, in February 2004, with Plaintiff Brown-Pennsylvania, Inc. ("Brown-Pa."). (Tola Countercl. ¶ 237.) Between

February 2004 and early 2007, Tola worked diligently with Brown-Pa. to maintain, grow, and service the clients he had worked with at his previous employer, Doyle Consulting Group, Inc., and to establish, maintain, grow, and service new business and clients, all for the benefit of Brown-Pa. (Id. ¶ 238.) By early 2007, Tola was working as a producing broker on a commission basis, receiving a 40% commission for the first year of all new business and 20% for all years thereafter. (Id. ¶ 239.) He had established a stable and lucrative group of accounts. (Id. ¶ 240.)

Around that time, Thomas Riley, Regional President and Chief Acquisition Officer of Brown-Pa.'s parent company Plaintiff Brown & Brown, Inc. ("Brown & Brown"), advised Tola that Brown & Brown was in the process of acquiring Plaintiff Grinspec, Inc. ("Grinspec"), a family-owned New Jersey brokerage firm. (Id. ¶ 241.) Although Brown & Brown was taking on Grinspec's assets, it was not acquiring the principals and key managers of Grinspec. (Id. ¶ 242.) As such, Riley asked Tola to give up his lucrative book of business with Brown-Pa. to manage Grinspec. (Id. ¶ 244.) In connection with this request, Riley, Tola, and Robert Cola of Brown-Pa. discussed Tola's transition to Grinspec, the terms of which were memorialized in a February 23, 2007 e-mail sent from Cola to both Tola and Riley. (Id. ¶ 245.) The e-mail stated as follows:

> To recap the meeting that we had here on Wednesday regarding Ryan's transition to Grinspec, here is what we discussed:
>
> - Ryan's book of business will remain here, will be serviced here, and Ryan will remain involved in key accounts by maintaining key relationships.
> - We will compensate his office for his involvement in those accounts
> - Ryan's Comp:
>   - ☐ Ryan's base will be between $250,000 and $275,000
>   - ☐ $70,000 will be added to his compensation, which will be paid by the compensation we pay to his office for his involvement.
>   - ☐ Bonus Full 8% of Net operating income (66.7% of overall available PCL Bonus), effective this year.
>   - ☐ PSP: Approximately $100,000
>   - ☐ Moving Allowance: $25,000

(Id. Ex. A.) In reliance on such promises, Tola accepted the employment and began work as

Grinspec's manager in April of 2007. (Id. ¶ 246.)

After Tola had been employed by Grinspec for many months, Brown & Brown management and Grinspec asked Tola to execute an employment agreement dated "as of April 2, 2007." (Id. ¶ 251.) According to Tola, his agreement was not supported by any consideration and was contrary to New Jersey public policy. (Id. ¶¶ 252, 257.) As part of the employment agreement, Grinspec sought to restrain Tola from engaging in competitive activities for public sector accounts following the conclusion of his employment with Grinspec. (Id. ¶ 254.)

In September of 2007, Riley advised Tola that he would not be paid in accordance with the February 23, 2007 e-mail. (Id. ¶ 247.) Since that time, and despite Tola's demands, Grinspec, at Riley's direction, has refused to pay Tola sums owed in amount of at least $190,000. (Id. ¶ 248.) In addition, Riley repeatedly engaged in unprofessional conduct towards Tola, undermined Tola's credibility, and interfered with the effective operation of Grinspec. (Id. ¶¶ 249-50.) Accordingly, on June 15, 2010, Tola left his employment with Grinspec. Shortly thereafter, Brown & Brown management and Grinspec threatened him with legal action to enforce the restrictive covenants in his written contract. (Id. ¶ 257.)

### B.  Facts Relevant to Defendant Cola's Counterclaim

In January 2004, Cola, who was then an employee of Doyle Consulting Group, Inc., was offered employment with Brown-Pa. and was presented with an employment agreement, which he signed. (Cola Countercl. ¶ 1.) Cola's employment with Brown-Pa. took effect on February 2, 2004. (Id. ¶ 3.) In 2006, Cola became a Profit Center Leader for Brown-Pa. and was responsible for overseeing Brown-Pa.'s producers and for making and keeping Brown-Pa. profitable. (Id. ¶¶ 4-5.) Through 2009, he worked diligently to maintain, grow, and service both his prior clients from Doyle Consulting and his new accounts, all for the benefit of Brown-Pa. (Id. ¶ 4.) In 2006, Cola was also in charge of overseeing the transition from Brown-Pa.'s use of the name "Doyle Consulting" to the

exclusive use of the name "Brown & Brown, Inc." or "Brown & Brown of Pennsylvania." (Id. ¶ 6.) By 2008, Plaintiffs no longer used the name "Doyle Consulting" or any derivatives thereof. (Id. ¶ 7.)

In early 2007, Cola began experiencing difficulties with his supervisor, Thomas Riley, who, as noted above, was the Regional President & Chief Acquisition Officer of Brown & Brown. (Id. ¶ 8.) Specifically, Riley engaged in embarrassing and unprofessional conduct towards Cola and his co-workers. (Id. ¶ 9.) In addition, Brown-Pa.'s controller, Dean Saperstein regularly engaged in embarrassing and unprofessional conduct, which undermined Cola's ability to perform his job. (Id. ¶ 10.) Through 2008 and 2009, Cola began to question his ability to continue effectively servicing Brown-Pa.'s clients, and developed some concern for the future of Brown & Brown due to disclosures made by Riley that were in breach of Riley's obligations. (Id. ¶ 11.)

On June 11, 2010, Cola resigned from Brown-Pa. and formed the independent company RGC Consulting, Inc. (Id. ¶¶ 12-13.) After Cola's resignation, Plaintiffs attempted to interfere with his livelihood by threatening action and taking legal action to enforce Cola's non-compete clause, which he believes to be unenforceable, not supported by consideration, and contrary to Pennsylvania law and public policy. (Id. ¶ 14.)

### C. The Present Lawsuit

On August 4, 2010, Plaintiffs commenced the present lawsuit against Cola, Tola, and their new employer Defendant Doyle Alliance Group ("Doyle Alliance"), setting forth fifteen Counts. Count I claims unfair competition under the Lanham Act, 15 U.S.C. § 1125, due to Defendants' use of the name "Doyle Alliance Group" and the internet domain "doylealliancegroup.com." (Compl. ¶¶ 109-18.) Count II asserts trademark infringement under the Lanham Act resulting from Defendants' use of the internet domain name "doylealliance group.com." (Id. ¶¶ 119-24.) Count III sets forth a state law claim of unfair competition, again caused by Defendants' use of the name

"Doyle Alliance Group." (Id. ¶¶ 125-33.) Count IV claims breach of contract against solely Cola and Tola, due to their alleged violation of their respective Employment Agreements. (Id. ¶¶ 134-40.) Count V avers a breach of fiduciary duty and/or duty of loyalty against Defendants Cola and Tola. (Id. ¶¶ 141-46.) Count VI asserts tortious interference with existing contractual relations against Doyle Alliance only for interfering with Cola and Tola's Employment Agreements. (Id. ¶¶ 148-56.) Count VII sets forth another tortious interference claim against all Defendants for interference with Plaintiffs' contractual and business relationships with customers. (Id. ¶¶ 157-63.) Count VIII contends that all Defendants tortiously interfered with Brown & Brown's contractual relations with its employees. (Id. ¶¶ 164-71.) Counts IX, X, and XI allege, against all Defendants, misappropriation of business, misappropriation of confidential and proprietary information, and misappropriation of property, respectively. (Id. ¶¶ 172-90.) Finally, Counts XII, XIII, XIV, and XV respectively assert unfair competition, civil conspiracy, conversion, and unjust enrichment against all Defendants. (Id. ¶¶ 188-211.)

On September 7, 2010, Defendant Ryan Tola filed a Motion to Dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(2). On the same date, all Defendants joined in a Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. By way of Memorandum and Order dated October 4, 2010, the Court granted Defendants' Motion for dismissal of the fiduciary duty/duty of loyalty claim, the tortious interference claims as to Defendants Tola and Cola, the conversion claim as to Tola and Cola only to the extent the claim alleged conversion of customers and business, and misappropriation of business/customers claim as to Tola and Cola. The Motion was denied in all other respects.

All Defendants filed Answers on October 22, 2010, and Defendants Tola and Cola filed Counterclaims. Tola alleged the following causes of action: (1) a declaratory judgment that the restrictive covenant in Tola's employment agreement with Grinspec is not enforceable (Tola

5

Countercl. ¶¶ 258-68); (2) interference with prospective advantageous relations (id. ¶¶ 269-74); (3) interference with contractual relations (id. ¶¶ 275-80); (4) unfair competition (id. ¶¶ 281-90); (5) breach of contract against only Defendant Grinspec (id. ¶¶ 291-97); and (5) violation of New Jersey Wage Payment Law against only Defendant Grinspec. (Id. ¶¶ 298-302.) Cola's Counterclaim alleged: (1) declaratory judgment that the restrictive covenant in his employment agreement with Brown-Pa. is unenforceable (Cola Countercl. ¶¶ 1-10), and (2) unfair competition. (Id. ¶¶ 11-20.) Via the present Motion, filed on November 11, 2010, Plaintiffs now seek to dismiss all but Count I (declaratory judgment) of both Counterclaims.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a counterclaim-defendant bears the burden of demonstrating that the counterclaim-plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior

era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57).

Expanding on the Twombly/Iqbal standards, the United States Court of Appeals for the Third Circuit succinctly summarized the two-prong analysis to be undertaken by district courts during a Rule 12(b)(6) review:

> [A]fter *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in *Iqbal,* where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).

Notwithstanding the foregoing, nothing in Twombly, Iqbal, or Fowler has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking,

7

Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002); see also Mayer v. Belichick, 605 F.3d 223, 229-30 (3d Cir. 2010).

### III. DISCUSSION

Plaintiffs' current Motion seeks dismissal of the entirety of Defendants Cola and Tola's Counterclaims, save for those causes of action requesting declaratory relief. In support of this Motion, Plaintiffs set forth two arguments. First, they contend that Tola's claims of tortious interference with prospective advantageous relations, tortious interference of contract, and unfair competition, as well as Cola's single claim of unfair competition, are untenable because they are based solely only Plaintiffs' proper efforts to prosecute a lawsuit based on the restrictive covenants. Second, they assert that Tola's breach of contract claim fails because he was, at all times, an at-will employee of Grinspec and not entitled to a set salary. The Court addresses each argument individually.

### A. **Whether Plaintiffs' Efforts to Judicially Enforce the Restrictive Covenants of Messrs. Cola and Tola Can Constitute Unfair Competition or Tortious Interference**

Counts II, III, and IV of Defendant Tola's Counterclaim allege tortious interference with

8

prospective advantageous relations, tortious interference with contract, and unfair competition, respectively, while Count II of Defendant Cola's Counterclaim asserts unfair competition. All of these claims rely on the basic proposition that Plaintiffs' attempted enforcement of the restrictive covenants contained in Defendants' employment agreements has disrupted their relationships with both their current employer and their current and prospective customers. Considering New Jersey law for Tola's Counterclaim and Pennsylvania law for Cola's Counterclaim,[1] the Court finds that such claims survive Rule 12(b)(6) scrutiny.

To establish a tortious interference claim, New Jersey law requires a plaintiff to prove four elements. Cargill Global Trading v. Applied Dev. Co., 706 F. Supp. 2d 563, 575 (D.N.J. 2010) (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31 (N.J. 1989); C & J Colonial Realty, Inc. v. Poughkeepsie Sav. Bank, FSB, 810 A.2d 1086, 1107 (N.J. Super. Ct. App. Div. 2002)). "First, plaintiff must have a protected interest; second, defendant must have behaved with 'malice' – that is, defendant must have intentionally interfered with that protected interest without justification; third, there must be a reasonable likelihood that the anticipated benefit from the protected interest would have been realized but for the interference; and fourth, economic damage must have resulted." Cargill, 706 F. Supp. 2d at 575. The second element – which is at the core of the present Motion – requires the defendant's interference to have been both intentional and malicious. Id. Interference is intentional when "'the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" Dello Russo v. Nagel, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003) (quoting RESTATEMENT (SECOND) TORTS, § 766A, cmt. e (1977)). Malice means that "the interference was inflicted

---

[1] The parties agree, as does this Court, that New Jersey law is applicable to Tola's allegations and Pennsylvania law is applicable to Cola's allegations.

intentionally and without justification or excuse."[2] Singer v. Beach Trading Co., 876 A.2d 885 (N.J. Super. Ct. App. Div. 2005). "A party's actions in its own interest and for its own financial benefit will not rise to the level of malice." Cargill, 706 F. Supp. 2d at 576; see also Windsor Secs., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 665 (3d Cir. 1993) ("[W]here an actor is motivated by a genuine desire to protect legitimate business interests, this factor weighs heavily against finding an improper interference.") Thus "a business-related explanation can justify a party's actions, so long as the business-related explanation justifies not only the defendant's motive and purpose, but also the means that it employed."[3] Cargill, 706 F. Supp. 2d at 576 (citing Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1171 (D.N.J. 2000)).

As for the claim of unfair competition, brought by both Defendants Tola and Cola, its "amorphous nature" makes for "an unevenly developed and difficult area of jurisprudence." Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co., 912 F. Supp. 727, 786 (D.N.J. 1995). "While

---

[2] The Restatement (Second) of Torts sets forth a list of factors for a court to consider when determining whether interference was "improper," including: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties." RESTATEMENT (SECOND) OF TORTS § 767 (1979); see also Limbeck v. County of Cumberland, No. CIV.A.03-5816, 2006 WL 2591024, at *9 (D.N.J. Sept. 8, 2006) (noting that "New Jersey has adopted the Restatement (Second) of Torts definition of tortious interference with existing contract"). At the motion to dismiss stage, the Court need not engage in a detailed analysis of the fact-intensive elements enumerated by the Restatement.

[3] Plaintiffs emphasize that the absence of either a privilege or justification for the interference is an element of a tortious interference claim. While Plaintiffs are correct as to Pennsylvania law, the only tortious interference claim present in this case was brought by Defendant Tola under New Jersey law. Plaintiffs do not cite, and this Court cannot find, any New Jersey cases making the absence of privilege an element of tortious interference. See Marshall v. Fenstermacher, 388 F. Supp. 2d 536, 557 (E.D. Pa. 2005) (listing elements of tortious interference claims under both Pennsylvania and New Jersey law). Nonetheless, as discussed above, it appears that demonstration of malice would necessarily satisfy the absence of privilege element.

its boundaries are, at a minimum, uncertain, . . . it seeks to espouse some baseline level of business fairness." Id.  As a general rule, "[t]he common law tort of unfair competition historically has been considered a subspecies of the class of torts known as tortious interference with business or contractual relations." Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc., No. A-3714-07T1, 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010) (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1, cmt. g (1995)).  Thus, where an unfair competition cause of action is premised on the same facts as a co-existing claim of tortious interference, "it seems likely that New Jersey law would find unfair competition where there has been tortious interference, which requires a demonstration of malice, or upon a finding of breach of good faith and fair dealing." Coast Cities, 912 F. Supp. at 786.  The same holds true under Pennsylvania law.  See ID § Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003) ("As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition.") (internal quotations omitted).

Plaintiffs now contend that Defendants' tortious interference and unfair competition claims fail because they do not properly allege the requisite element of malice or absence of privilege, i.e. that the interference was improper.  Because an employer "does not act improperly in attempting to enforce a restrictive covenant in good faith and by proper means against its former employee," Plaintiffs claim that a lawsuit based on enforcing such covenants is proper, justified, and privileged as a matter of law.  (Pls.' Mem. Supp. Mot. Dismiss 7.)

The Court finds, however, that the sparsely-developed record does not permit Rule 12(b)(6) dismissal at this time.  While Plaintiffs correctly note that a justifiable suit to enforce a valid non-compete agreement cannot constitute malice, they disregard the principle that a party relying on such a claim must prove both that the restrictive covenant is valid and the party used proper means

11

to protect its interest. Cargill, 706 F. Supp. 2d at 576 (New Jersey law); Acumed LLC v. Adv. Surgical Servs., Inc., 561 F.3d 199, 214-15 (3d Cir. 2009) (Pennsylvania law). Indeed, the Restatement (Second) of Torts § 773, adopted in both Pennsylvania and New Jersey, recognizes that the privilege of asserting a legally protected interest is "of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) in good faith asserts or threatens to protect it, and (3) the threat is to protect it by appropriate means." RESTATEMENT (SECOND) TORTS § 773, cmt. a (1979); see also Gilbert v. Bionetics Corp., No. CIV.A.98-2668, 2000 WL 807015, at *8 (E.D. Pa. June 6, 2000) (noting that Pennsylvania has adopted § 773 of the Restatement (Second) of Torts); Brooks v. Sys. Mfg. Corp., No. CIV.A. 013-1523, 2006 WL 560153, at *5 (E.D. Pa. Mar. 6, 2006) ("[A]n employer is justified in preventing a former employee from working with a new employer if it has a *valid* non-compete agreement prohibiting the new employment.") (emphasis added); Limbeck, 2006 WL 2591024, at *9 (adopting the Restatement (Second) of Torts' definition of tortious interference).

To that end, Defendants, in this case, have affirmatively alleged lack of privilege or business-related explanation. Defendant Cola's Counterclaim specifically asserts that the enforcement of the restrictive covenant in his employment agreement would cause undue hardship on Defendant Cola, be injurious to the public, serve no legitimate purpose, and be an unlawful restraint of trade. (Cola Countercl. ¶¶ 3-6.) It goes on to allege that "Plaintiffs have attempted wrongfully to enforce the restrictive covenant in Cola's employment agreement with Brown-PA, in interference with prospective advantageous relations and in interference with Cola's contractual relationship with Doyle, *with knowledge that the covenant is not enforceable against Cola, intentionally and maliciously for the sole purpose of harming Cola and/or Doyle, and not for any legitimate purpose.*" (Cola Countercl. ¶ 16 (emphasis added).) Similarly, Defendant Tola contends

that the restrictive covenant in his contract is not enforceable also on grounds of undue hardship, injury to the public, and an unlawful restraint of trade. (Tola Countercl. ¶ 260-63.) He further notes that Plaintiffs have attempted to wrongfully enforce this covenant against him with knowledge that it is not enforceable and with the intent to maliciously harm him. (Tola Countercl. ¶ 286.) Taking such allegations as true, as the Court is bound to do at this juncture of the litigation, Plaintiffs have adequately alleged malice/absence of privilege. Accordingly, the Court must deny the Motion to Dismiss on these causes of action.

### B. Whether Defendant Tola's Breach of Contract Claim Must Fail

Count V of Defendant Tola's Counterclaim contends that under the terms of his employment with Grinspec, he was entitled to be compensated in accordance with his oral agreement, but that Grinspec failed to pay the compensation promised. (Tola Countercl. ¶¶ 291-97.) Plaintiffs now move to dismiss this claim on two grounds. First, they assert this claim is premised entirely on an imprecise, redacted e-mail that "bears no indicia of an enforceable contract." (Pls.' Mem. Supp. Mot. Dismiss 8.) Second, they argue that, by the terms of his actual employment contract, Tola was, at all times, an at-will employee and Grinspec was entitled "to increase or decrease, change, withdrawal or modif[y]" Tola's compensation. (Id. at 8-9 (quoting Tola Employment Agreement ¶¶ 5(a), 7).) The Court takes each contention in turn.

#### 1. Whether Tola Had a Contract for a Specific Salary

The New Jersey Supreme Court has affirmed that an employer and an employee can enter into an enforceable oral employment agreement. Shebar v. Sanyo Bus. Sys Corp., 544 A.2d 377, 382-83 (N.J. 1988). An oral employment contract, "may be formed by the existence of conditions, not only manifested by words, but also implied from the circumstances of employment." Troy v. Rutgers, 774 A.2d 476, 482 (N.J. 2001). "Where a court is called upon to resolve an ambiguity or

13

uncertainty concerning the terms of such a contract, it may consider 'custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.'" Winslow v. Corporate Express, Inc., 834 A.2d 1037, 1043 (N.J. Super. Ct. App. Div. 2003) (quoting Kearny PBA Local # 21 v. Town of Kearny, 405 A.2d 393, 400 (N.J. 1979)). Notably, the contract must be "sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992) (quoting West Caldwell v. Caldwell, 138 A.2d 402 (N.J. 1958)). The "amount of compensation, the 'price term,' is an essential term of any contract." MDC Inv. Prop., L.L.C. v. Marando, 44 F. Supp. 2d 693, 698-99 (D.N.J. 1999). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co., 608 A.2d at 284.

In his breach of contract claim, Defendant Tola alleges that "[i]n connection with the request of Riley that Tola move from his existing position at Brown-Pa. to manage the acquired Grinspec subsidiary, Riley provided Tola employment with Grinspec as per the terms and conditions set forth in an e-mail of February 23, 2007." (Tola Countercl. ¶ 245.) He goes on to aver that "[u]nder the terms of his employment with Grinspec, [he] was entitled to be compensated in accordance with the terms set forth in [the February 23, 2007 e-mail]." (Id. ¶ 292.) While Plaintiffs provide multiple reasons why this e-mail cannot constitute a contract or memorialize an enforceable agreement, their argument misunderstands the crux of Tola's claim. Tola asserts that Thomas Riley, on behalf of Brown & Brown and Grinspec, orally promised Tola a certain salary. The February 23, 2007 e-mail simply constitutes evidence of that oral agreement.[4] Moreover, Tola's allegations regarding the purported contract are sufficiently definite as to the essential terms, specifying that Tola's base

---

[4] Plaintiffs make much of the fact that the e-mail is redacted. While that fact might alter the weight to be given to this evidence down the road, it does not, at this juncture, create a basis for the Court to disregard it.

salary will be between $250,000 and $275,000, that $70,000 will be added to his compensation for his involvement with Brown-Pa. Clients, and that he will receive a bonus of eight percent of the net operating income.[5] (Id. Ex. A.) Taking Tola's allegations as true, the Court finds that he has sufficiently alleged the existence of an enforceable oral employment agreement for payment of a specified salary range.

### 2. Whether Tola's Compensation Was, By Contract, "Subject to Increase or Decrease, Change, Withdrawal, or Modification at Any Time"

Alternatively, Plaintiffs argue that even assuming Tola had an oral employment contract for a specific salary, the terms of that contract were superseded by the written Employment Agreement he signed "as of" April 2, 2007. That Employment Agreement stated that, "[e]mployee shall serve as an at-will employee of the Company, meaning that the employment relationship memorialized by this agreement may be terminated by Company or Employee at anytime, with or without cause or

---

[5] Plaintiffs argue that any alleged oral agreement is unenforceable for vagueness since the precise salary was not indicated in the e-mail. In support of this contention, they cite to the Third Circuit decision in Baer v. Chase, 392 F.3d 609 (3d Cir. 2004) and the District Court decision in MDC Inv. Prop., L.L.C. v. Marando, 44 F. Supp. 2d 693, 698-99 (D.N.J. 1999). While Plaintiffs are correct that "New Jersey law deems the price term, *i.e.*, the amount of compensation, an essential term of any contract," Baer, 392 F.3d at 619, both of these cases were decided on summary judgment, and in neither case was there evidence of any discussion regarding compensation. Id. at 621 ("Nothing in the record indicates that the parties agreed on how, how much, where, or for what period Chase would compensate Baer."); MDC Inv. Prop., 44 F. Supp. 2d at 699 ("Here, the undisputed evidence establishes that the parties never discussed or agreed on Marando's compensation. The Confidentiality Agreement is utterly devoid of any mention of Marando's compensation. Moreover, during his deposition, Marando repeatedly and emphatically testified that the parties never reached an agreement on compensation.").
   This case is distinguishable on two key grounds. First, this matter is at the motion to dismiss stage, meaning that the Court must take Tola's allegations as true without any need for supporting evidence. Second, unlike the above cases, Tola has explicitly alleged that the parties affirmatively agreed on a narrow salary range, plus a specific bonus for his employment with Grinspec. That allegation is bolstered by an e-mail recounting that agreement. Given these factors, the Court finds that Tola has adequately pled a sufficiently specific contract for the payment of a certain salary.

15

advance notice and without the requirement of any procedural steps . . ." (Compl. Ex. 1 ("Employment Agreement") ¶ 7.) The Agreement addressed compensation, as follows:

> 5. <u>Compensation</u>
> (a) In general, all compensation arrangements (including fringe benefits) are subject to increase or decrease, change or withdrawal or modification at any time, and from time to time, at the sole discretion of Company management. The Company is not bound to continue any level, or kind, of compensation or benefit.
> (b) Employee's compensation shall be as agreed between the Company and Employee from time to time. Employee's compensation shall be paid to Employee less withholding for State and Federal Income tax, FICA, FUTA, and other required statutory deductions.
> (c) Employee shall also be entitled to reimbursement for reasonable business expenses as approved by the Regional President of Parent [Brown & Brown, Inc.].

(<u>Id.</u> ¶ 5.) Finally, the Agreement stated, "[t]his instrument contains the entire agreement of the parties regarding the subject matter hereof. This Agreement also voids and renders to affect any prior employment contracts, non-competition agreements and/or confidentiality agreements that Employee has signed or may have signed with the Company." (<u>Id.</u> ¶ 14.) According to Plaintiffs, under these provisions, Tola was an at-will employee subject to a change in his compensation at any time, and any prior agreement was voided by the written contract.

While Plaintiffs' argument may prove to have merit upon completion of discovery, the Court cannot dismiss Tola's breach of contract claim at this time for several reasons. First, Plaintiffs' Motion assumes the validity of the written employment contract. Count I of Tola's Counterclaim, however, seeks a declaration that the April 2, 2007 employment agreement is not enforceable on various grounds. (Tola Countercl. ¶ 252.) Should it come to light that the agreement is indeed invalid, it would not be able to supersede the alleged February 2007 oral contract between Plaintiffs and Tola.

Moreover, even assuming the April 2007 employment agreement is enforceable, its provisions do not clearly and unambiguously call for the voidance of the oral contract. The integration states only that "[t]his instrument contains the entire agreement of the parties *regarding the subject matter hereof.*" (Employment Agreement ¶ 14 (emphasis added).) The written April agreement notably does not address the amount of compensation Tola was to be paid, but merely indicates that his compensation shall be "as agreed" between the Company and the Employee. Because the amount of compensation "is an essential term of any contract," MDC Inv. Prop., 44 F. Supp. 2d at 698-99, and because the written agreement lacks such a price term as part of its "subject matter," it is a reasonable inference that the compensation provision of the written contract incorporates the previous oral agreement. In any event, given the written contract's inherent vagueness as to the meaning of "compensation . . . as agreed," the Court cannot enforce that contract to the exclusion of an oral agreement that specifically addresses this price term.[6] Swider v. Ha-Lo Indus, Inc., 134 F. Supp. 2d 607, 618 (D.N.J. 2001) ("In order to be enforceable, the terms of any contract – oral or written – must be sufficiently clear and capable of judicial interpretation.").

Finally, the Court finds no basis for Plaintiffs' argument that because Tola continued to work for Grinspec after receiving the September 2007 notification that his wages would not be as previously discussed, he "accepted and changed the terms of his compensation from Grinspec as a matter of law." (Pls.' Mem. Supp. Mot. Dismiss 12.) While Defendant Tola concedes that he was an at-will employee for Grinspec and free to resign or be fired at any time, this fact still leaves open several questions regarding his agreed-upon compensation both before and after September 2007.

---

[6] The Court also notes that the integration clause of the written agreement only voids prior employment contracts that Tola "has signed or may have signed with Grinspec." (Employment Agreement ¶ 14.) Giving this language its plain meaning, the oral agreement would not be affected since it was not a contract that was signed or "may have [been] signed."

First, as noted above, in light of the written agreement's ambiguity on compensation, an issue remains as to whether there was an oral contract for a specific level of compensation and what Tola's prior pay was prior to September 2007. As Tola's argues that, "[d]espite demands, [he] has *never* been paid as agreed," the Court must find that there may have been a breach of contract from April 2007 to at least September 2007. (Def. Tola Resp. Mot. Dismiss 11.) Moreover, the circumstances of the conversation between Tola and Riley in September 2007 regarding Tola's compensation are not part of any existing record, leaving the Court unable to determine whether there was any "modification" of his "compensation arrangements" as defined by the written contract. Indeed, even if Riley's remarks in September 2007 had the effect of modifying Tola's compensation, the Court has no evidence to establish what his new compensation was to be and whether Grinspec failed to pay that new level of compensation.[7]

In short, the lack of factual development undergirding the issues raised in the Counterclaim precludes the Court from conducting any meaningful review of the viability of Defendant Tola's breach of contract allegation. Taking the well-pled allegations as true, Tola has adequately alleged that an oral contract existed for the payment of a specific salary, the oral contract was not voided by the subsequent written contract, and that Plaintiff Grinspec failed to pay to Tola the agreed upon

---

[7] Plaintiffs cite to Mita v. Chubb Computer Servs., Inc., 767 A.2d 989, 994 (N.J. Super. Ct. App. Div. 2001) and Winslow v. Corp. Express, Inc., 834 A.2d 1037, 1044 (N.J. Super. Ct. App. Div. 2008) for the proposition that the employer of an at-will employee is free to change the terms of employment – including a reduction in compensation – at any time. Notably, however, Winslow expressly recognized that such an employer can "only make such a change prospectively, after giving plaintiff prior notice that would afford him an opportunity to decide whether he wanted to continue working at a reduced rate of compensation." Winslow, 834 A.2d at 1044. Plaintiffs, in this case, offer no showing that a compensation rate lower than that set forth in the February 2007 e-mail was in effect prior to September 2007. Moreover, Plaintiffs fail to conclusively establish that the September 2007 conversation between Riley and Tola constituted notice of a change in compensation.

compensation. As such, the Court declines to dismiss this claim.[8]

IV. CONCLUSION

Plaintiffs' arguments in favor of their Motion to Dismiss are premised on inherently factual arguments. At this early stage in the litigation, however, the Court must take all allegations in the Counterclaims as true and may not prematurely make factual findings, particularly in light of the absence of evidence to support them. Guided by this strict standard, the Court finds that Defendants Tola and Cola have properly pled their various claims of unfair competition, tortious interference, and breach of contract. Accordingly, the Motion is denied in its entirety.

---

[8] In light of the Court's ruling regarding Tola's breach of contract claim, his cause of action under the New Jersey Wage Payment Law cannot be dismissed. See N.J. STAT ANN. § 34:11-4.4 ("No employer may withhold or divert any portion of an employee's wages," except under certain specified exceptions.); N.J. STAT. ANN. § 24:11-4.7 ("It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act, except to pay wages at shorter intervals than as herein provided, or to pay wages in advance.").