IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROWN & BROWN, INC., | : | |
| BROWN & BROWN OF | : | |
| PENNSYLVANIA, INC. and GRINSPEC, | : | |
| INC. | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT COLA, RYAN TOLA, and | : | NO. 10-3898 |
| DOYLE ALLIANCE GROUP, | : | |
| | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

BUCKWALTER, S.J.                                                                July 13, 2011

Currently pending before the Court is Defendant Robert Cola's Motion for Leave to Amend his Counterclaim. For the following reasons, the Motion is granted in part and denied part.

I.     **FACTUAL AND PROCEDURAL HISTORY**

This Court previously summarized the detailed facts underlying this litigation in an October 4, 2010 Memorandum and Order. <u>See</u> <u>Brown & Brown, Inc. v. Cola</u>, 745 F. Supp. 2d 588 (E.D. Pa. 2010). In lieu of repeating that synopsis here, the Court simply incorporates it by reference and reviews only the facts pertinent to the Motion at issue.

A.     **Facts Relevant to Defendant Cola's Counterclaim**

In January 2004, Cola, who was then an employee of Doyle Consulting Group, Inc. ("Doyle Consulting"), was offered employment with Brown & Brown of Pennsylvania, Inc.

("Brown-PA"), a subsidiary of Brown & Brown, Inc. ("Brown & Brown"), and was presented with an employment agreement ("Employment Agreement"), which he signed. (Def. Cola's Mot. Dismiss, Ex. A, Proposed Am. Countercl. ("Cola Proposed Am. Countercl.") ¶ 1.) Cola's employment with Brown-PA took effect on February 2, 2004. (Id. ¶ 3.) In 2006, Cola became a Profit Center Leader for Brown-PA and was responsible for overseeing Brown-PA's producers and for making and keeping Brown-PA profitable. (Id. ¶¶ 4-5.) Through 2009, he worked diligently to maintain, grow, and service both his prior clients from Doyle Consulting and his new accounts, all for the benefit of Brown-PA. (Id. ¶ 4.) In 2006, Cola was also in charge of overseeing the transition from Brown-PA's use of the name "Doyle Consulting" to the exclusive use of the name "Brown & Brown, Inc." or "Brown & Brown of Pennsylvania." (Id. ¶ 6.) By 2008, Plaintiffs no longer used the name "Doyle Consulting" or any derivatives thereof. (Id. ¶ 7.)

In early 2007, Cola began experiencing difficulties with his supervisor, Thomas Riley, who was the Regional President & Chief Acquisition Officer of Brown & Brown. (Id. ¶ 8.) Specifically, Riley engaged in embarrassing and unprofessional conduct towards Cola and his co-workers. (Id. ¶ 9.) In addition, Brown-PA's controller, Dean Saperstein, regularly engaged in embarrassing and unprofessional conduct, which undermined Cola's ability to perform his job. (Id. ¶ 10.) Through 2008 and 2009, Cola began to question his ability to continue effectively servicing Brown-PA's clients, and developed some concern for the future of Brown & Brown due to disclosures made by Riley in breach of his obligations. (Id. ¶ 11.)

On December 1, 2009, Cola learned from Saperstein that Brown & Brown had unliterally decided to separate the financial reporting of Brown-PA's wholesale operations from its retail (or consulting) operations. (Id. ¶ 12.) This split allegedly threatened to undermine the retail group's success and financial viability. (Id. ¶¶ 13-14.) It also threatened to significantly decrease Cola's

bonus entitlement and total compensation, in purported violation of his Brown-PA Employment Agreement, Term 5 of which required a mutual agreement by Cola and Brown-PA before his compensation and bonus could be changed.  (Id.)

On June 11, 2010, Cola resigned from Brown-PA and formed the independent company RGC Consulting, Inc.  (Id. ¶¶ 15-16.)  After Cola's resignation, Plaintiffs attempted to interfere with his livelihood by threatening and taking legal action to enforce Cola's non-compete clause, which he believes to be unenforceable, not supported by consideration, and contrary to Pennsylvania law and public policy.  (Id. ¶ 17.)

### B.     The Present Lawsuit

On August 4, 2010, Plaintiffs Brown & Brown, Brown-PA, and Grinspec, Inc. (collectively "Plaintiffs") commenced the present lawsuit against Cola, former Grinspec employee Ryan Tola, and their new employer Defendant Doyle Alliance Group ("Doyle Alliance"), setting forth fifteen Counts.  Count I claimed unfair competition under the Lanham Act, 15 U.S.C. § 1125, due to Defendants' use of the name "Doyle Alliance Group" and the internet domain "doylealliancegroup.com."  (Compl. ¶¶ 109-18.)  Count II asserted trademark infringement under the Lanham Act resulting from Defendants' use of the internet domain name "doylealliance group.com."  (Id. ¶¶ 119-24.)  Count III set forth a state law claim of unfair competition, again caused by Defendants' use of the name "Doyle Alliance Group."  (Id. ¶¶ 125-33.)  Count IV claimed breach of contract against solely Cola and Tola, due to their alleged violation of their respective Employment Agreements.  (Id. ¶¶ 134-40.)  Count V averred a breach of fiduciary duty and/or duty of loyalty against Defendants Cola and Tola.  (Id. ¶¶ 141-46.)  Count VI asserted tortious interference with existing contractual relations against Doyle Alliance only for interfering with Cola and Tola's Employment Agreements.  (Id. ¶¶ 148-56.)

Count VII set forth another tortious interference claim against all Defendants for interference with Plaintiffs' contractual and business relationships with customers. (Id. ¶¶ 157-63.) Count VIII contended that all Defendants tortiously interfered with Brown & Brown's contractual relations with its employees. (Id. ¶¶ 164-71.) Counts IX, X, and XI alleged, against all Defendants, misappropriation of business, misappropriation of confidential and proprietary information, and misappropriation of property, respectively. (Id. ¶¶ 172-90.) Finally, Counts XII, XIII, XIV, and XV respectively asserted unfair competition, civil conspiracy, conversion, and unjust enrichment against all Defendants. (Id. ¶¶ 188-211.)

On September 7, 2010, Defendant Ryan Tola filed a Motion to Dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(2). On the same date, all Defendants joined in a Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. By way of Memorandum and Order dated October 4, 2010, the Court granted Defendants' Motion for dismissal of the fiduciary duty/duty of loyalty claim, the tortious interference claims as to Defendants Tola and Cola, the conversion claim as to Tola and Cola only to the extent the claim alleged conversion of customers and business, and misappropriation of business/customers claim as to Tola and Cola. The Motion was denied in all other respects.

All Defendants filed Answers on October 22, 2010, and Defendants Tola and Cola both filed Counterclaims. Defendant Cola's Counterclaim alleged: (1) declaratory judgment that the restrictive covenant in his employment agreement with Brown-PA is unenforceable (Cola Countercl. ¶¶ 1-10), and (2) unfair competition. (Id. ¶¶ 11-20.) In December 2010, this Court denied Plaintiffs' Motion to Dismiss Counterclaims.

In connection with its original Complaint, Plaintiffs sought a preliminary injunction to

preclude Defendants from engaging in any additional competition that violated their restrictive covenants. The parties proceeded to a preliminary injunction hearing on March 29, 2011. Following two days of testimony and supplemental briefing by the parties, the Court issued Findings of Fact and Conclusions of Law denying that injunction. Brown & Brown v. Cola, No. CIV.A.10-3898, 2011 WL 2415143 (E.D. Pa. June 16, 2011).

### C.     The Current Motion

As a result of both the ongoing discovery, together with some of the testimony presented at the preliminary injunction hearing, Defendant Cola allegedly discovered additional evidence to support additions/amendments to his Counterclaims. On March 21, 2011, Cola informed Plaintiffs of his intent to amend and sought Plaintiffs' consent to such an amendment. On April 15, 2011, Plaintiffs informed Cola of their refusal to give such consent. Accordingly, on May 11, 2011, Defendant Cola filed the present Motion for Leave to Amend his Counterclaim to include two new items. First, he seeks to add a counterclaim for breach of contract against Plaintiffs Brown & Brown and Brown-PA for their material breach of Cola's Employment Agreement by unilaterally changing the formula by which Cola's bonus compensation was to be computed. Second, he requests leave to amend his existing Counterclaim for unfair competition against all Plaintiffs to include a claim for recovery of attorneys' fees under § 35(a) of the Lanham Act upon prevailing on Plaintiff's Lanham Act claims. Plaintiffs responded to this Motion on May 24, 2011, making it now ripe for this Court's consideration.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) sets out the standard for granting leave to amend a complaint when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P.

15(a). The Rule clearly states that "[t]he court should freely give leave when justice so requires." Id. Nonetheless, the policy favoring liberal amendments is not "unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Philadelphia, 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. at 182).

Plaintiffs' sole challenge to Defendant Cola's proposed amendments relies on an allegation of futility.[1] The court may deny leave to amend, among other reasons, on the basis of the futility of the amendment. See Foman, 371 U.S. at 182. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Holst v. Oxman, 290 Fed. Appx. 508, 510 (3d Cir. 2008); In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. Holst, 290 Fed Appx. at 510. The trial court may thus deny leave to amend where the amendment would not withstand a motion to dismiss. Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court set forth the Rule 12(b)(6) motion to dismiss standard and recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

---

[1] Although Defendant addresses the other factors of (a) undue delay, bad faith or dilatory motives and (b) prejudice, Plaintiffs make no allegation that such factors should preclude the amendment of the Counterclaim. Accordingly, the Court does not address them.

and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (re-framing the plausibility standard) (internal citations omitted) .

Notwithstanding the foregoing, nothing in Twombly or Iqbal altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v.

Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002); see also Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010), cert. denied, 131 S. Ct. 1607 (2011). Ultimately, given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." Aruanno v. New Jersey, No. CIV.A.06-296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009). "If a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." 6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990) (emphasis added).

### III.   DISCUSSION

As set forth above, Defendant Cola seeks to amend his Counterclaim in two respects: (1) to add a claim for breach of contract against Brown & Brown and Brown-PA in connection with the change in his bonus structure, and (2) to include a claim for attorneys' fees pursuant to Section 35(a) of the Lanham Act. The Court addresses each proposed amendment individually.

#### A.   **Breach of Contract Claim**

Defendant Cola first seeks to add a breach of contract counterclaim against Plaintiffs in

this action based on discovery occurring during the preliminary stages of this case. He explains that prior to the preliminary injunction hearing, Defendants took the depositions of several of Plaintiffs key witnesses, including (1) Thomas Riley, who was Cola's supervisor and Brown & Brown's Regional President during the events in question, and (2) Ed Chorzelewski, who was offered by Plaintiffs as their corporate designee. Each of these witnesses purportedly offered testimony "clearly establish[ing] that Brown & Brown and Brown-PA knowingly breached Cola's employment Agreement in December 2009 – *prior* to any alleged breach of the Agreement by Cola." (Def. Cola's Mot. Amend 4.)

First, during Riley's January 14, 2011 deposition, Defendant Cola's counsel asked about Brown & Brown's decision in late 2009 to split the retail branch and wholesale branch of Brown-PA, where Cola was the Profit Center Leader. Originally, Cola's bonus formula was based on the joint performance of the two branches. (Def. Cola's Mot. Amend, Ex. C, Dep. of Thomas Riley ("Riley Dep."), 11:8-19, Jan. 14, 2011.) The splitting of the branches, however, threatened to significantly decrease Cola's bonus since both branches would be required to individually meet the required performance threshold for him to qualify for a bonus. (Id. at 10:8-11:12.) Nonetheless, Riley expressly stated that Cola had no opportunity to agree to or weigh in on this decision to split the branches and, thus, change his compensation structure. (Id. at 9:8-10:2.) Such unilateral alteration allegedly violated Cola's written Employment Agreement, which stated: "**Compensation**. Employee's compensation shall be <u>as agreed</u> between Company and Employee from time to time." (Def. Cola's Mot. Amend, Ex. B (emphasis added).)

Second, Plaintiffs' corporate designee, Ed Chorzelewski, testified that he would view a change in a set bonus structure to be a violation of a written employment agreement, as follows:

> Q. If you hit all of your marks and according to the formula were entitled to a

>   substantial bonus – if they took that away from you and threatened not to pay it, you wouldn't regard that as a breach of your employment agreement?
>
>   . . .
>
>   A.   If it's not in writing, I wouldn't view it as a breach.
>
>   Q.   If it were in writing, would you view it as a breach?
>
>   A.   Yes.

(Def. Cola's Mot. Amend, Ex. D, Dep. of Edward Chorzelewski, 232:19-233:8, May 11, 2011.)

Finally, Defendant Cola contends that Brown-PA's accounting manager, Dean Saperstein,[2] allegedly told Cola he believed the purpose of splitting the retail and wholesale branches was to "turn the screws on [Cola] and the retail branch, and make sure [he] didn't make too much money." (Def. Cola's Mot. Summ. J., Aff. of Robert Cola, ¶ 38.)

Under Pennsylvania law, a claim for breach of contract requires that a plaintiff allege: "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 580 (Pa. Super. Ct. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super.Ct. 1999)); see also Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). Plaintiffs now argue that Cola fails to meet these elements for two main reasons. First, they claim that the alleged breach of contract is nothing more than speculation of a possible future breach that could have, but never did, come to pass. Second, they contend that there was no enforceable agreement – either orally or in writing – to a guaranteed bonus.[3] Accordingly, they claim that the

---

[2] Defendant Cola notes that Mr. Saperstein's deposition has been noticed, but not yet taken.

[3] Plaintiffs raise a third basis for a finding of futility as well. Specifically, they allege that even if such an agreement had existed and was sufficiently definite, Defendant Cola agreed

amendment to add this claim would be futile.  The Court takes each argument individually.

### 1. Whether the Damage Claim is Too Speculative

"To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'"  Ware, 322 F.3d at 225-26 (quoting ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 668 (3d Cir. 1998)).  "'At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor.'"  Id. at 226 (quoting ATACS Corp., 155 F.3d at 669 (quoting Spang & Co. v. United States Steel Corp., 545 A.2d 861, 866 (Pa. 1988))).  While mathematical certainty is not required, the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages "without conjecture."  Delahanty v. First Pa. Bank, N.A., 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983).  The Pennsylvania Superior Court, in Pashak v. Barish, 450 A.2d 67 (Pa. Super. Ct. 1982) observed that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. . . .  Thus, damages are speculative only if the uncertainty concerns the *fact* of damages rather than the *amount*."  Id. at 69 (emphasis in original) (quotations omitted).

In Solomon v. The Guardian Life Ins. Co. of Am., No. CIV.A.96-1597, 1996 WL 741888, at *2 (E.D. Pa. Dec. 10, 1996), aff'd, 162 F.3d 1152 (3d Cir. 1998), the court confronted the issue of whether pleading damages in the form of threatened or imminent injury is sufficient to set forth a breach of contract action.  Id. at *2-4.  The court found no authority "where

---

to and ratified the new bonus structure by continuing his employment with Brown-PA for over seven months after the claimed breach.
    As the Court finds merit to Plaintiffs' first two grounds for denying leave to amend, the merits of the third ground need not be addressed.

damages based on a theory of threatened injury or imminent harm have survived a motion to dismiss for failure to state a claim." Id. at *3.  It noted that despite liberal pleading rules, "a pleading must be specific enough to provide a defendant with proper notice so that the defendant may frame responsive pleadings." Id. at *4.  "In this regard, it is not sufficient to allege damages as a mere conclusion of the pleader." Id.

Similarly, in Cohen v. Pelagatti, 528 A.2d 657 (Pa. Super. Ct. 1987), the plaintiff alleged a civil conspiracy which requires, as one of its key elements, the existence of identifiable damages established by the facts alleged in support of the cause of action. Id. at 658.  Finding plaintiff's claim insufficiently pled, the court noted that "[w]here the harm alleged is either speculative, or involves a threat of future harm only, the fact of damages is uncertain, and does not suffice to create a cause of action." Id. at 658-59; see also Logan v. Mirror Printing Co. of Altoona, Pa., 600 A.2d 225, 227 (Pa. Super. Ct. 1991) ("[W]e conclude that appellant's contention that he would have won the election if the Altoona Mirror had printed his third ad on November 5, 1987 and a second ad on the day before election was entirely too speculative. Therefore, appellant cannot recover in this action the salary, pension benefits and other emoluments of office which he would have enjoyed if he had been elected to office.").

In the present case, the Court finds that Cola's damages on his breach of contract claim are entirely too speculative to survive a motion to dismiss.  The proposed Amended Counterclaim alleges that, "Plaintiffs breached the Employment Agreement by, in or around December 2009, unilaterally deciding to split Brown-PA's wholesale operations from its retail (or consulting) operations for accounting purposes, without Cola's knowledge or agreement," and that as a result of this alleged material breach of his Employment Agreement, "Cola's compensation, had he remained with Brown-PA, would have been significantly reduced."

(Cola's Proposed Am. Countercl. ¶¶ 45, 48.)  Such allegations, however, require this Court, and in turn a factfinder, to make several speculations before finding the existence of damages.  First, Defendant would have to prove that a corporate decision to split financial reporting for these two operations would have adversely affected the retail side such that it could not have possibly met the necessary operating profit threshold.  Second, Defendant would be required to prove that had he stayed throughout 2010 and dedicated himself fully to his work, he could have not have possibly guaranteed himself the identical, if not better, bonus than the prior year.  Certainly, at the time he left in June 2010 – after admittedly dedicating some work time to the formation of Doyle Consulting Group – Defendant Cola would have no way of knowing what would or could have happened with his full efforts.

While such speculations already undermine the viability of Cola's claim, Cola's pleading burdens are significantly more complicated by the evidence showing that, in 2010, both the wholesale and retail sides of Brown-PA did, in fact, reach the 28% operating profit threshold, even without Cola's participation and even without moving around any expenses.  (Pls.' Resp. Mot. Dismiss, Ex. A, N.T. 9:7-19, Mar. 30, 2011.)  From such testimony, it is a reasonable, and easy, inference that had Cola worked equally as hard as his successor, he would have, in fact, obtained a performance bonus in 2010, thus eliminating any damages from his alleged breach of contract.[4]

---

[4] The parties dispute whether the purpose of the wholesale/retail split was to affect Cola's compensation.  As noted above, Cola references statements from Dean Saperstein indicating that the purpose was to "turn the screws" on Cola and ensure that he did not make too much money.  Plaintiffs, however, present evidence that Cola's supervisor, Thomas Riley, expressly told Cola that "the purpose of this [splitting of operations] is not to hurt you," and that if Cola's bonus was affected, Riley could have paid the bonus out of his regional budget.  (Riley Dep. 18:5-13.)  Given this evidentiary dispute, the Court must, at this stage of the proceeding, defer to Defendant Cola's version of the events.

In short, Defendant Cola's alleged damages are simply too speculative and thus make the fact of damages uncertain. Accordingly, the Court must find that his proposed Counterclaim for breach of contract cannot survive a motion to dismiss standard.

### 2. Whether Cola Had A Contractual Right to a Guaranteed Bonus

Alternatively, even if Cola's alleged damages are deemed sufficiently specific, Plaintiffs argue that Cola has not properly alleged the first element of a breach of contract claim – the existence of a contractual right to a guaranteed bonus. "'[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain.'" Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 585 (3d Cir. 2009) (quoting Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956)). "In other words, we look to see whether 'the terms are sufficiently definite to be specifically enforced.'" Id. (quoting Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986)). "An agreement is expressed with sufficient clarity 'if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" Helpin v. Trs. of the Univ. of Pa., 969 A.2d 601, 610-11 (Pa. Super. Ct. 2009) (quoting Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1194 (Pa. Super. Ct. 1987)), aff'd, 10 A.3d 267 (Pa. 2010).

In the present case, Cola's proposed Amended Counterclaim for breach of contract relies solely on Term 5 of the Employment Agreement. (Cola's Proposed Am. Countercl. ¶ 44.) That provision states that Cola's "compensation shall be as agreed between Company and Employee from time to time." (Id.) Cola identifies no other contractual provision setting forth his entitlement to a performance bonus, a specific salary, or any precise form of compensation. Indeed, nothing in the Employment Contract provides *any* sufficiently definite term of

14

compensation. Thus, the Employment Agreement, as offered, suggests only an "agreement to agree at a future date." Gastley v. Am. Stores Co., 63 Pa. D. & C. 482, 487 (1948) (holding as unspecific a contract provision which stated, "[t]he parties hereto shall from time to time make such adjustments of the compensation as shall be mutually agreed upon by the parties"). Further, even assuming *arguendo* that Cola was contractually entitled to a performance bonus, nothing in the Employment Agreement specifies that that bonus must be based off of joint, not split, reporting from the wholesale and retail divisions. If anything, the split did not change Cola's compensation and bonus structure, but simply altered what efforts were required to obtain it.

### 3. Conclusion as to Breach of Contract Claim

In sum, the Court finds that Cola's proposed breach of contract counterclaim does not withstand Rule 12(b)(6) review on two grounds. First, the allegations regarding Cola's damages for breach of contract are entirely speculative and, thus, deprive the claim of one of its key elements. Second, even if the damages element was present, Cola fails to set forth the existence of a valid and enforceable contract for payment for a performance based on a set formula. In other words, Cola's breach of contract counterclaim, as currently pled, is simply not plausible under the standards set forth in Twombley and Iqbal. Accordingly, the Court deems the claim futile and denies leave for Cola to add this cause of action to his Counterclaim.

### B. Statutory Claim for Attorneys' Fees

Defendant Cola's second proposed amendment to his Counterclaim seeks to include, as part of his existing claim for unfair competition, a claim for attorneys' fees pursuant to section 35(a) of the Lanham Act. Specifically, Cola argues that Plaintiffs' Lanham Act claims against him are groundless and intended only to "harass Cola, interfere with his business, and to 'wipe

him out' financially to prevent him from competing with Plaintiffs in the employee benefits marketplace in the future." (Def. Cola's Mot. Leave to Amend 6.)  To that end, Cola asserts that he is entitled to attorneys' fees under section 35(a) of the Lanham Act, which states, in relevant part, that the court "in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a) (2011).

Plaintiffs respond that this claim is likewise futile because this litigation is not one of the "exceptional cases" in which attorneys' fees could possibly be awarded.  They go on to argue that Defendants already sought to dismiss the Lanham Act claims via a Rule 12(b)(6) Motion and via a summary judgment motion, both of which were unsuccessful.  They conclude that "[i]f this were truly an 'exceptional case[]' in which Cola could hope to recover attorneys' fees on the Lanham Act claims, one imagines Cola would have achieved at least some small modicum of progress in defeating or paring down those claims.  He has not." (Pls.' Resp. Mot. Leave to Amend 10.)

The Third Circuit has held that an exceptional case under section 35(a) "'must involve culpable conduct on the part of the losing party.'"  Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 280 (3d Cir. 2000) (quoting Ferrero U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991)).  Thus, "'a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as []exceptional[].'"  Id. (quoting Ferrero, 952 F.2d at 47).  Where the evidence reveals that a plaintiff made a deliberate effort to beat a financially weaker opponent through the use of vexatious litigation, the Third Circuit has recognized that exceptional circumstances warranting attorneys' fees under section 35(a) may exist.  Id. at 282.

In this case, although Plaintiffs' Lanham Act case survived both a motion to dismiss and

16

a summary judgment motion, the Court's rulings were based either on the liberal pleading requirement of Federal Rule of Civil Procedure 8 or the presumption in favor of the non-moving party in the face of conflicting affidavits, under Federal Rule of Civil Procedure 56.  In both instances, the Court recognized that the case was still in the early stages of litigation and that discovery was far from complete.  Such rulings were far from a commentary that the Lanham Act claims had merit and were raised in good faith.  Defendant Cola's proposed amendment now alleges that Plaintiffs have "asserted groundless Lanham Act claims against Cola, which claims Plaintiffs bring against Cola intentionally and maliciously to harass Cola, to interfere with Cola's business, and despite knowing that the claims lack substance or factual basis." (Def. Cola's Proposed Am. Countercl. ¶ 38.)  His Motion for Leave to Amend goes on to elaborate that Plaintiffs have deliberately disregarded the fact that Cola does not operate under the trademarked "Doyle" name and that the recently taken discovery reveals no evidence to support Lanham Act claims against him. (Def. Cola's Mot. Leave to Amend 6-7.)

Taking these allegations as true, as required by Federal Rule of Civil Procedure 12(b)(6), it is entirely plausible that this litigation may be the "exceptional" case warranting an award of attorneys' fees under the Lanham Act.  Ultimately, the full scope of discovery may establish that the Lanham Act claim against Defendant Cola is groundless and brought solely in an attempt to prevent him from competing against Plaintiffs' businesses.  At a minimum, the Court cannot, at this juncture, find that the proposed amendment sets forth an implausible claim and is *clearly* futile.  As such, denial of the motion for leave to amend is improper.  6 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990).  The Court thus grants leave to add the request for attorneys' fees under section 35(a) of the Lanham Act.

## IV.     CONCLUSION

In light of the foregoing, Defendant Cola's Motion for Leave to Amend Counterclaims is granted in part and denied in part.  Cola's proposed breach of contract claim could not survive a motion to dismiss for various reasons and, as such, must be deemed futile.  Cola's proposed claim for attorneys' fees, on the other hand, may potentially have merit.  Given the policy favoring liberal amendments, the Court grants the Motion on this ground.  An appropriate Order follows.