

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROWN & BROWN, INC., BROWN & BROWN OF PENNSYLVANIA, INC. and GRINSPEC, INC. | : : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : : | |
| ROBERT COLA, RYAN TOLA, and DOYLE ALLIANCE GROUP, | : : : | NO. 10-3898 |
| Defendants. | : : | |

**FILED**
SEP 20 2011
MICHAEL ... , Clerk
_____ Dep. Clerk

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                                                                             September 20, 2011

Currently pending before the Court is the Motion of Defendants Robert Cola, Ryan Tola, and Doyle Alliance Group, Inc. ("DAG") (collectively "Defendants") to Strike the Jury Demand of Plaintiffs Brown & Brown, Inc. ("B&B"), Brown & Brown of Pennsylvania ("Brown-Pa."), and Grinspec, Inc. ("Grinspec") (collectively "Plaintiffs"). For the following reasons, the Motion is granted in part and denied in part.

### I.    FACTUAL BACKGROUND

As this case has been pending for some time, both the Court and the parties are well-versed in the lengthy facts involved. The Court therefore focuses solely on the facts relevant to the pending Motion.

According to the Complaint, Plaintiff B&B is a national insurance brokerage and service company. (Compl. ¶ 13.) B&B and its subsidiaries, including Brown-Pa. based in Pennsylvania, and Grinspec based in New Jersey, offer a broad range of insurance and reinsurance products and

services, as well as risk management, third-party administration, insurance consulting, and other insurance-related services to both the public and private sectors. (Id. ¶¶ 13, 15.) In 2003, B&B identified a network of related businesses in Pennsylvania and New Jersey as potential partners. (Id. ¶¶ 20-21.) One particular brokerage business – Doyle Consulting Group, Inc. and Doyle Consulting Group of New Jersey, Inc. (collectively "Doyle Consulting") – was owned by Francis Doyle and Kevin Mullin. (Id. ¶ 21.) Following preliminary discussions, B&B and Doyle Consulting executed an Asset Purchase Agreement ("APA") through which B&B and Brown-Pa. acquired the assets of Doyle Consulting. (Id. ¶ 22.) The signatories to the APA included Doyle Consulting, Francis Doyle, Kevin Mullin, B&B, and Brown-Pa. (Id. ¶ 23.) Plaintiffs purchased the full range of Doyle Consulting's assets, including, among other things, Doyle Consulting's current book of business, tangible personal property, seller contracts, governmental authorizations, records, intangible property such as intellectual property, claims against third parties, and good will. (Id. ¶¶ 24-25.)

Prior to February 2004, Defendant Robert Cola was an employee and key broker for Doyle Consulting. (Id. ¶ 36.) On February 1, 2004, Cola entered into a written employment agreement with Brown-Pa. ("Cola Employment Agreement"), which contained a "non-solicitation of customers" provision prohibiting him from directly or indirectly soliciting or inducing any existing or prospective customers of B&B and Brown-Pa., or any of their affiliates, both during his employment with Brown-Pa. and for twenty-four months after the termination of his employment. (Id. ¶¶ 37-38.) This provision did not prevent Cola from working for a competitor, so long as he did not solicit or accept business from Plaintiffs' customers and he advised any prospective future employers of his contractual non-solicitation obligations. (Id. ¶¶ 40-41.) In addition, Cola expressly agreed not to use or disclose any confidential proprietary information of B&B or its affiliates both

2

during or after his employment with Brown-Pa. (Id. ¶ 42.) Cola further contracted that, both during his employment with Brown-Pa. and for two years after the cessation of such employment, he would not, directly or indirectly, solicit employees of Brown-Pa. or B&B to work for a competitor. (Id. ¶ 44.) Finally, Cola agreed that, during his employment with Brown-Pa., he would "not undertake the active planning or organizing of any business activity competitive with the work Employee performs." (Id. ¶ 46.) Although the Cola Employment Agreement was with Brown-Pa., it expressly identified B&B as an intended third-party beneficiary. (Id. ¶ 60.)

Similarly, prior to February 2004, Defendant Ryan Tola was an employee and key broker for Doyle Consulting. (Id. ¶ 47.) On February 1, 2004, Tola entered into a written employment agreement with Brown-Pa., giving him the position of producer and senior consultant. (Id.) Several years later, on April 2, 2007, Tola was promoted and began employment with another Brown & Brown subsidiary – Plaintiff Grinspec. (Id. ¶ 48.) As a result, he signed a new employment agreement ("Tola Employment Agreement"), dated April 2, 2007. (Id.) This Agreement contained restrictive covenants identical to those found in the Cola Employment Agreement. (Id. ¶¶ 49-57.) Although the Tola Employment Agreement was with Grinspec, it expressly identified B&B as an intended third-party beneficiary. (Id. ¶ 60.)

In March 2010, Francis Doyle, former owner of Doyle Consulting, formed a new insurance brokerage firm named Doyle Alliance Group ("DAG"), and allegedly began operations to compete with B&B in the insurance agency, brokerage, and consulting business. (Id. ¶ 84.) Despite Doyle Consulting's sale of its corporate name, Mr. Doyle proceeded to use the name "Doyle" in his new venture. (Id. ¶ 85.) Mr. Doyle also purportedly recruited and offered employment to both Cola and Tola, and encouraged them to solicit and take Plaintiffs' customers and use Plaintiffs' confidential business information. (Id. ¶ 87.) On June 11, 2010, Cola advised B&B's Regional President,

Thomas E. Riley, that he was resigning, but represented that he was not going to join Doyle. (Id. ¶ 88.) Nine days later, on June 15, 2010, Tola also resigned his position with Grinspec. (Id. ¶ 90.)

Plaintiffs allege, upon information and belief, that immediately after their resignations, Cola and Tola both began to work as insurance brokers and consultants for DAG. (Id. ¶ 91.) Plaintiffs also contend that while Cola and Tola were still employed by B&B, they were actively engaged in building a competitive business by meeting with Doyle, setting up an office, soliciting B&B's customers, and using B&B's proprietary information. (Id. ¶¶ 92-95.) Tola and Cola, with DAG's knowledge and consent, have since encouraged Plaintiffs' customers to cease working with Plaintiffs. (Id. ¶ 96.) In addition, Plaintiffs claim that Tola and Cola, sometimes with the assistance of DAG representatives, have made false, detrimental, and disparaging statements about Plaintiffs and/or their products or services, and have caused Broker of Record letters[1] to be issued under the name of DAG for several of Plaintiffs' customers. (Id. ¶¶ 97-98.)

On August 4, 2010, Plaintiffs commenced the present lawsuit against Cola, Tola, and DAG, setting forth fifteen Counts as follows. Count I claims unfair competition under the Lanham Act, 15 U.S.C. § 1125, due to Defendants' use of the name "Doyle Alliance Group" and the internet domain "doyealliancegroup.com." (Id. ¶¶ 109-18.) Count II asserts trademark infringement under the Lanham Act resulting from Defendants' use of the internet domain name "doyealliance group.com." (Id. ¶¶ 119-24.) Count III sets forth a state law claim of unfair competition, again caused by Defendants' use of the name "Doyle Alliance Group." (Id. ¶¶ 125-33.) Count IV claims breach of contract solely against Cola and Tola, due to their alleged violation of their respective Employment

---

[1] Broker of Record letters are used in the insurance industry to recognize the authority of the insurance broker to act for and pursue insurance markets and products for the brokerage company's customers, and are essential to identifying the brokerage company entitled to receive commissions from insurance carriers for any business underwritten by such carriers in favor of the brokerage company's customers. (Id. ¶ 99.)

4

Agreements. (Id. ¶¶ 134-40.) Count V avers a breach of fiduciary duty and/or duty of loyalty against Defendants Cola and Tola. (Id. ¶¶ 141-46.) Count VI asserts tortious interference with existing contractual relations against DAG only for interfering with Cola and Tola's Employment Agreements. (Id. ¶¶ 148-56.) Count VII sets forth another tortious interference claim against all Defendants for interference with Plaintiffs' contractual and business relationships with customers. (Id. ¶¶ 157-63.) Count VIII contends that all Defendants tortiously interfered with B&B's contractual relations with its employees. (Id. ¶¶ 164-71.) Counts IX, X, and XI allege, against all Defendants, misappropriation of business, misappropriation of confidential and proprietary information, and misappropriation of property, respectively. (Id. ¶¶ 172-190.) Finally, Counts XII, XIII, XIV, and XV respectively assert unfair competition, civil conspiracy, conversion, and unjust enrichment against all Defendants. (Id. ¶¶ 188-211.)

Defendants responded with two separate Motions to Dismiss on various grounds. By way of Memorandum and Order dated October 4, 2010, the Court dismissed the fiduciary duty/duty of loyalty claim, the tortious interference claims as to Defendants Tola and Cola, the conversion claim as to Tola and Cola only to the extent the claim alleged conversion of customers and business, and the misappropriation of business/customers claim as to Tola and Cola. The Motions were denied in all other respects.

All Defendants filed Answers on October 22, 2010, and Defendants Tola and Cola both filed Counterclaims. Defendant Cola's Counterclaim (1) seeks a declaratory judgment that the restrictive covenant in his Employment Agreement with Brown-Pa. is unenforceable (Cola Countercl. ¶¶ 1-10), and (2) alleges unfair competition. (Id. ¶¶ 11-20.) Tola's Counterclaim sets forth the following causes of action: (1) declaratory judgment that the restrictive covenant in his Employment Agreement with Grinspec is not enforceable (Tola Answer & Countercl. ¶¶ 258-68); (2) interference

with prospective advantageous relations (id. ¶¶ 264-74); (3) interference with contractual relations (id. ¶¶ 275-80); (4) unfair competition (id. ¶ 281-90); (5) breach of contract (id. ¶¶ 291-97); and (6) violation of New Jersey Wage Payment Law. (Id. ¶¶ 299-302.) In December 2010, this Court denied Plaintiffs' Motion to Dismiss Counterclaims.

In connection with its original Complaint, Plaintiffs requested a preliminary injunction to preclude Defendants from engaging in any additional competition that violated their restrictive covenants. The parties proceeded to a preliminary injunction hearing on March 29, 2011. Following two days of testimony and supplemental briefing by the parties, the Court issued Findings of Fact and Conclusions of Law denying that injunction. Brown & Brown v. Cola, No. Civ.A.10-3898, 2011 WL 2415143 (E.D. Pa. June 16, 2011).

Defendant Tola filed the present Motion to Strike the Jury Trial Demand on August 23, 2011 and Defendant Cola subsequently joined in that Motion. Plaintiff responded on September 6, 2011, making this Motion ripe for judicial consideration.

## II. DISCUSSION

The present Motion seeks an Order from the Court striking Plaintiffs' demand for a jury trial in this matter. Defendants specifically contend that Plaintiffs have knowingly and voluntarily waived their right to a jury by way of both the Employment Agreements entered into with Cola and Tola, and the APA between B&B and Doyle Consulting Group. The Cola Employment Agreement and Tola Employment Agreement both state as follows:

> Waiver of Jury Trial. Employee and Company hereby knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation related to or arising out of, under or in conjunction with this Agreement, or Employee's employment with Company.

(Compl., Ex. A. ¶ 19; Id. Ex. B. ¶ 17.) Similarly, the 2004 APA between Doyle Consulting Group and B&B states:

6

> THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING RELATING TO OR ARISING OUT OF, UNDER OR IN CONJUNCTION WITH THIS AGREEMENT OR ANY OTHER AGREEMENT, NOTE OR INSTRUMENT CONTEMPLATED HEREIN.

(Defs.' Mot. to Dismiss, Ex. 1, ¶11.4(b).) In light of these express provisions, Defendants now claim that Plaintiffs have no remaining right to a jury trial.

The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in "[s]uits at common law." U.S. CONST. amend. VII. Federal Rule of Civil Procedure 38 likewise preserves the right to a jury trial as declared by the Seventh Amendment or as provided by federal statute. Fed. R. Civ. P. 38(a). This right may be waived if such waiver is made knowingly and voluntarily based on the facts of the case. Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007). Nonetheless, because the right to a jury trial is fundamental, courts must "indulge every reasonable presumption against waiver." Henricks Commerce Park, LLC v. Main Steel Polishing Co., Inc., No. Civ.A.09-23, 2009 WL 2524348, at *3 (W.D. Pa. Aug. 18, 2009). The burden of proving that a jury waiver was both knowing and voluntary requires the party seeking enforcement of the waiver clause to prove the following: "(1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous." Id. at *3 (citing First Union Nat'l Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001)).

Defendants assert that these four elements have been satisfied, and that the three agreements at issue in this case — together with the relationships created by them — give rise to all of Plaintiffs' claims, including the breach of contract claims, the Lanham Act claims, and all other state tort law claims. See Henricks, 2009 WL 2524348, at *6 (applying jury trial waiver to tort claims as well as

breach of contract claims). Plaintiffs, in turn, explicitly concede both the enforceability of the jury trial waivers and their applicability to the contract claim and some of the tort claims against Defendants Tola and Cola. They contend, however, that they are entitled to a jury trial (1) against Defendants Cola and Tola on the Lanham Act/state unfair competition claims (Counts I through III) because those claims bear no relation to the Employment Agreements with Cola and Tola, or their employment by Plaintiffs; and (2) against DAG on all claims because that entity is not a party to any agreement containing a jury trial waiver. The Court addresses these arguments individually.

### A. Whether Plaintiffs Have Waived Their Right to a Jury Trial on Their Lanham Act Claims and Common Law Claims of Unfair Competition (Counts I–III)

As set forth above, Counts I and II of the Complaint assert unfair competition and trademark infringement under the Lanham Act due to Defendants' use of the name "Doyle Alliance Group" and the internet domain name "doylealliancegroup.com." (Compl. ¶¶ 109-24.) Count III sets forth a state law claim of unfair competition, again caused by Defendants' use of the name "Doyle Alliance Group." (Id. ¶¶ 125-33.) The Complaint goes on to note that Defendants continued use of these names were in direct violation of the APA, specifically section 7.11 requiring Doyle Consulting Group to "cease all operational use" of the corporate name or derivatives thereof. Defendants assert that because these causes of action arise directly out of the various agreements at issue, all of which contain an explicit jury trial waiver, Plaintiffs are not entitled to a jury trial on such claims.

Defendants' argument, however, is incorrect on two bases. First, to the extent Defendants attempt to invoke the waiver provisions in the Employment Agreements, they fail to acknowledge that those waivers are limited to claims related to or arising out of "this Agreement, or Employee's employment with Company." See Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co., No. Civ.A.09-236, 2009 WL 4572911, at *14 (W.D. Pa. Dec. 4, 2009) (holding that "[t]he phrase 'this Agreement' would appear to limit the scope of the waiver clause to the [agreement in which the

8

clause appears]"). By contrast, the Lanham Act claims are completely unrelated and do not reference either the Employment Agreements or Cola's and Tola's actual employment. Indeed, as aptly noted by Plaintiffs, even had the Employment Agreements or any employment relationship never existed, Plaintiffs would have still had Lanham Act claims against Cola, Tola, and DAG for improper use of the "Doyle" name.

Second, to the extent that Defendants rely on the waiver provision encompassed in the APA, its reliance is misplaced. As a basic rule, "a jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1166 (9th Cir. 1996); see also Hulsey v. West, 966 F.2d 579, 581 (10th Cir. 1992) ("Generally, a jury waiver provision in a contract or lease affects only the rights of the parties to that contract or lease."). The APA jury waiver provision in this case stated that, "[t]he *parties* . . . waive any right either may have to a trial by jury with respect to any proceeding relating to or arising out of, under or in conjunction with this agreement or any other agreement, note or instrument contemplated herein." (Defs.' Mot. to Dismiss, Ex. 1, ¶ 11.4(b) (emphasis added; capitalization omitted).) None of the Defendants in this case was a signatory or party to the APA, and thus cannot invoke the jury waiver provision against Plaintiffs.

In an effort to overcome this obstacle, Defendants cursorily reference the decision in Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212 (3d Cir. 2007),[2] wherein the defendants moved to strike the plaintiff's jury demand based on a waiver in an agreement entered into by the plaintiff and the corporate defendant. Id. at 221. The agreement had not been signed by the two individual defendants, who were directors and officers of the corporate defendant. Id. The district court found

---

[2] Defendants actually cite to only the district court opinion in that case. (Defs.' Mot. to Strike Jury Trial Demand 8.) Liberally construing Defendants' brief, however, the Court will assume that Defendants meant to cite to the Third Circuit decision, which affirmed the district court and provided the controlling law on this subject.

that the waiver nonetheless covered the individual defendants based on ordinary agency principles, even though they were not parties to the agreement. Id. On appeal, the United States Court of Appeals for the Third Circuit agreed, finding that "when a valid contractual jury trial waiver provision applies to a signatory corporation, the waiver also applies to nonsignatory directors and officers seeking to invoke the waiver as agents of the corporation." Id. at 225. The court reasoned that because corporations can only act through agents and employees, a rule that did not allow nonsignatory agents of a signatory corporation to invoke a valid contractual jury waiver provision would render such an agreement "of little practical value" because "it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity itself." Id. (internal quotations omitted).

While Tracinda constitutes binding law in this Circuit, the decision's reasoning expressly rested on the narrow exception of agency. More recently, another decision from this Court persuasively distinguished Tracinda to find that in the absence of an agency relationship, "a broad jury waiver clause, standing alone, is [not enough] to permit a non-signatory to enforce a waiver." Quinn Constr., Inc. v. Skanska USA, Inc., No. Civ.A.07-406, 2010 WL 4909587, at *6 (E.D. Pa. Nov. 30, 2010). The district judge further rejected the notion that the subject matter of the jury waiver clause should govern the inquiry, reasoning that, "jury waivers are broadly worded and would support non-signatory enforcement more often than not. Whereas the agency exception creates a limited and predictable right of non-signatory enforcement, a pure linguistic approach would extend the impact of waiver clauses without a clear and identifiable stopping point." Id. In turn, such an expansion "would be in conflict with the presumption against waiver of this right."[3] Id.

---

[3] This Court acknowledges that there may be some difference of opinion in other jurisdictions. For example, the United States District Court for the Middle District of Florida has commented that "[b]oth Eleventh Circuit and Florida Courts have recognized that a non-signatory party may enforce a jury trial waiver against a signatory party under the doctrine of equitable estoppel."

In the present case, the jury waiver provision of the APA is undoubtedly broad and would linguistically seem to encompass the subject matter of the Lanham Act and related state law claims. Nevertheless, as indicated above, none of the Defendants are parties to that Agreement. Moreover, Defendants fail to argue — and this Court can discern no factual basis for finding — that either Tola, Cola, or DAG were agents of Doyle Consulting when the APA was signed. Absent such an agency relationship, this Court must "indulge every reasonable presumption against waiver," Henricks, 2009 WL 2524348, at *3, and find that these Defendants lack standing to enforce the jury waiver clause of the APA against Plaintiffs. Accordingly, the Court holds that Counts I–III of Plaintiffs' Complaint must be submitted to a jury.

**B.  Whether Plaintiffs Have Waived Their Right to A Jury Trial as to Any Claims Against Doyle Alliance Group**

While Plaintiffs concede that they have knowingly and voluntarily waived their right to a jury

---

Powers v. Lazy Days RV Ctr., Inc., No. Civ.A.05-1542, 2006 WL 1890188, at *2 (M.D. Fla. July 10, 2006) (citing Koechli v. BIP Int'l, Inc., 870 So.2d 940, 944 (Fla. Dist. Ct. App. 2004) and McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984, abrogated by, Lawson v. Life of the South Ins. Co., ___ F.3d ___, 2011 WL 3476876 (11th Cir. Aug. 10, 2011)). Similarly, the Southern District of Alabama has remarked that, "[i]f the waiver is knowing and voluntary under this test, and if the claims asserted are of the sort addressed by the waiver, a non-signatory may enforce the waiver." Penn Nat. Mut. Cas. Ins. Co. v. IPSCO Steel (Alabama), Inc., No. Civ.A.07-524, 2008 WL 4183345, at *2 (S.D. Ala. Sept. 9, 2008).

Notably, however, Defendants have not brought any of these cases to the Court's attention, let alone argued why their holdings should be applied in lieu of the well-reasoned decision from this Court, as bolstered by the Ninth and Tenth Circuits. Upon conducting our own review of these contrary cases, this Court is unconvinced by their rationales. Moreover, the sole other cases cited by Defendants in support of their Motion are inapposite. See SLB Ins., Inc. v. Brown & Brown, Inc. No. Civ.A.06-4189, 2007 WL 1152660, at *2 (E.D. Pa. Apr. 16, 2007) (finding that although one of the plaintiffs did not actually sign the agreement containing the jury trial waiver, it was executed by her co-plaintiff employer meaning that she was bound to it to the same extent as her employer); Henricks, 2009 WL 2524348, at *4 (discussing only whether the jury waiver provision applied to specific *claims* and not whether it could be invoked by certain *parties* in the case); Brown v. Cushman & Wakefield, Inc., 235 F. Supp. 2d 291, 294 (S.D.N.Y. 2002) (same).

...

trial as to some of the claims against Defendants Cola and Tola based on the Employment Agreements, they flatly deny such waiver with respect to any of their claims against DAG. The Court must agree. As discussed in detail above, without some type of agency between a signatory and non-signatory, a jury waiver provision may generally not be invoked by a non-party to a contract or agreement. Defendants make no attempt to show either that DAG was a party to the APA or some other agreement containing a jury waiver provision, or that DAG was somehow an agent of one of the parties to any of the contracts at issue in this case. Given these failures, the Court simply cannot find that Plaintiffs have waived their fundamental right to a jury with respect to any of the claims against DAG.

### III. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Strike Plaintiffs' Jury Demand in this action must be granted in part and denied in part. As to those Counts that, by Plaintiffs' own concession, fall within the scope of the jury waiver provisions of the two Employment Agreements at issue and/or the APA,[4] the Court grants Defendants' Motion. With respect to the remainder of the Counts,[5] the Court finds no basis on which to hold that Plaintiffs waived their fundamental right to a jury trial.[6]

An appropriate Order follows.

---

[4] Count IV, Counts X–XI as against only Defendants Tola and Cola, Counts XIII–XV as against only Defendants Tola and Cola

[5] Counts I–III, Count VII, Count VIII, Count IX, Counts X–XI as against only Defendant DAG, and Counts XIII–XV as against only Defendant DAG

[6] This Court's October 4, 2010 Memorandum and Order previously dismissed Counts V-VI, Count VII–IX only as to Defendants Cola and Tola, Count XII, and Count XIV only as to Defendants Tola and Cola and only in part.